J-A23006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY COBBS, JR., | : | |
| | : | |
| Appellant | : | No. 936 WDA 2014 |

Appeal from the Judgment of Sentence entered on May 2, 2014
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0001691-2013

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED September 1, 2015**

Jeffrey Cobbs, Jr. ("Cobbs"), appeals from the judgment of sentence imposed following his convictions of simple assault, terroristic threats, and the summary offense of criminal mischief.[1]  We affirm.

The trial court set forth the relevant facts underlying this appeal as follows:

> On October 30, 2012, Sarah Cobbs ("Ms. Cobbs") was at her residence making Halloween decorations for her daughter's elementary school class.  Although she and [Cobbs], her husband, both owned the residence, she was estranged from [Cobbs] and she resided there with her three children.  [Cobbs] resided elsewhere.  She was eight months pregnant and [Cobbs] was the father of the child.  Their three young children were sleeping in the residence.  She had called [Cobbs] a couple times earlier in the day to ask him if he could watch their children due to the fact that their nanny was ill.  When she and [Cobbs] finally spoke on the phone, the conversation became heated. Both Ms. Cobbs and [Cobbs] began attacking each other over their romantic relationships with other people.  The conversation

---

[1] **See** 18 Pa.C.S.A. §§ 2701(a), 2706(a)(1), 3304(a)(2).

became extremely heated when Ms. Cobbs told [Cobbs] that she was sleeping with another person. [Cobbs] abruptly hung up the telephone. Shortly thereafter, [Cobbs] appeared at the residence and he was very angry and agitated. He began accusing her of having sexual relations with someone else and he placed his hands around Ms. Cobb[s]'s neck and began choking her while she was sitting on the couch. She was unable to breathe. He began to push her down into the arm of the couch. Ms. Cobb[s] was unable to breathe and she "started to see black spots everywhere." Ms. Cobbs believed she was going to die. [Cobbs] stopped choking her and walked across the room. He continued ranting about her sexual relations with another person. [Cobbs] became more and more angry and picked up pumpkins[,] which were in the house as decorations[,] and he began throwing the pumpkins around the house. [Cobbs] then came back at Ms. Cobbs and started choking her again. He demanded that she produce her cell phone. After about ten to fifteen seconds, [Cobbs] backed off. He continued berating Ms. Cobbs, calling her "a dirty whore." He then walked over to the couch where she was sitting and he flipped the couch over. Ms. Cobbs struck her head on the wall. Her abdominal area also struck the wall. [Cobbs] then called Ms. Cobbs['s] mother and told her to come get Ms. Cobbs. He repeatedly stated that Ms. Cobbs would "be leaving in a body bag" if Ms. Cobbs'[s] mother didn't come pick her up. Ms. Cobbs was wedged between the couch and the wall and she heard her children begin to cry. She believed she was going to die. After [Cobbs] ended the phone conversation with Ms. Cobbs'[s] mother, he grabbed Ms. Cobbs by her hair and began pulling her from behind the couch. While he was pulling her, he repeatedly punched her in the head. [Cobbs] began demanding that Ms. Cobbs identify the person with whom she was having romantic relations. Ms. Cobbs refused to identify the individual. [Cobbs] then ordered Ms. Cobbs to leave the residence. Ms. Cobbs indicated that she would leave but she wanted to take the children with her. [Cobbs] would not permit the children to leave. Ms. Cobbs began putting her shoes on to leave[, after which Cobbs] changed course and would not let her leave. He pushed her down into a chair.

At this point, there was a knock on the door. [Cobbs's] son and his girlfriend, Allison Didaro, arrived at the residence. They had been called by Ms. Cobb[s]'s mother. Arrangements were made for Allison Didaro to take care of the children. [Cobbs's] son attempted to calm [Cobbs]. [Cobbs] then started

- 2 -

to walk out of the house. Ms. Cobbs followed [Cobbs,] and he told her that he would break every window of her automobile unless she identified her paramour. While outside, [Cobbs] picked up a large piece of cement and used it to repeatedly strike the windshield of Ms. Cobb[s]'s automobile until it cracked. He then threw the piece of cement through the windshield. [Cobbs] then came back into the house and told Ms. Cobbs that she can't keep playing games with him. [Cobbs] specifically stated "This is our life and I could have killed you." He indicated that he would "spend the rest of his life making this up to you." [Cobbs] then said goodbye to his children and left the residence. After [Cobbs] had been gone about ten minutes, Ms. Cobb[s]'s mother arrived at the residence. Ms. Cobbs went to the hospital with Allison Didaro and [Cobbs's] son. She was treated and released.

At trial, Marcie Riecks ["Riecks"], one of [Cobbs's] former lovers, testified that [Cobbs] called her on the evening of October 30, 2012. She and [Cobbs] had been involved in a relationship until 2002[,] but they had resolved their differences in 2012[,] and began speaking again. During the telephone call on the night of the incident in question …, [Cobbs] was very distraught and told [] Riecks that he had choked Ms. Cobbs and that "her eyes were bugging out of her head." He also told [] Riecks that he thought he had killed Ms. Cobbs.

[Cobbs] testified in his own defense. He denied assaulting Ms. Cobbs. He described the entire incident[,] and his description involved an angry argument but no physical contact. [Cobbs's] son testified that he did not observe an assault nor did he observe any damage to Ms. Cobb[s]'s vehicle. He testified that when he arrived at the residence, [Cobbs] was angry. His son testified that [Cobbs] calmed down and left the residence. [Cobbs] also presented character witnesses.

Trial Court Opinion, 1/14/15, at 2-4.

A few months after the assault, the Commonwealth charged Cobbs with aggravated assault, false imprisonment, terroristic threats and criminal mischief. The matter proceeded to a non-jury trial, at the close of which the trial court acquitted Cobbs of aggravated assault and false imprisonment,

but found him guilty of simple assault, terroristic threats and criminal mischief. Immediately after trial, the trial court sentenced Cobbs to serve five years of probation for his conviction of terroristic threats, and imposed no further sentence as to the remaining convictions. Cobbs timely filed a post-sentence Motion, challenging the weight of the evidence and the trial court's ruling concerning a Commonwealth objection at trial. The trial court denied the post-sentence Motion, after which Cobbs filed a timely Notice of Appeal.

Cobbs presents the following issues for our review:

1. Whether the verdicts of guilty as to simple assault and terroristic threats were against the weight of the evidence where the Commonwealth's key witnesses blatantly contradicted each other[,] and the trial court found that [Ms. Cobbs] was not credible on her claim that [Cobbs] choked her with considerable force?

2. Whether the trial court erred in sustaining the Commonwealth's objection to non-leading questions, as leading, where said questions were directed to [Cobbs] to permit him to address the Commonwealth's key allegations against him?

Brief for Appellant at 4.

Cobbs first argues that his convictions of simple assault and terroristic threats were against the weight of the evidence and must be overturned. *Id.* at 17-19.

Our standard in reviewing a weight of the evidence claim is as follows:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented,

an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted).

Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, [an appellate] Court cannot substitute its judgment for that of the [fact-finder] on issues of credibility, or that of the trial judge respecting weight. Our review is limited to determining whether the trial court abused its discretion[.]

***Commonwealth v. Sanchez***, 36 A.3d 24, 27 (Pa. 2011) (citations and quotation marks omitted).

According to Cobbs, "[t]o find [Ms.] Cobbs'[s] testimony credible, where she had not one single objectively[-]determined injury, shocks the conscience." Brief for Appellant at 19; ***see also id.*** at 18 (alleging that there was no indication of any injury to Ms. Cobbs in either her hospital records or the photographs taken of her after the assault, which were presented at trial). Additionally, Cobbs avers that the trial court disbelieved the portion of Ms. Cobbs's version of the assault whereby she testified that Cobbs choked her nearly to the point of unconsciousness. ***Id.*** at 19; ***see also*** N.T., 5/2/14, at 74 (wherein the trial court stated that "[t]he hospital records do not support, from a clinical evaluation standpoint, the testimony

of [Ms. Cobbs] being choked to the point of unconsciousness. And the way [Ms. Cobbs] described that, the [c]ourt finds it very hard to believe there would be no marks on her neck."). Cobbs asserts that "[f]or the trial court to find that [Ms.] Cobbs was not credible with respect to her testimony about the force with which she was allegedly choked, but find [that] Riecks was credible in testifying that [Cobbs] cho[]ked [Ms.] Cobbs with such force, shocks the conscience." Brief for Appellant at 19.[2]

The trial court addressed Cobbs's challenge to the weight of the evidence as follows:

> [Cobbs's] weight claims essentially challenge this [c]ourt's assessment of [the] credibility of Ms. Cobbs and [] Riecks. [Cobbs's] argument is that this [c]ourt should not have rendered a guilty verdict of simple assault because of comments it made about Ms. Cobbs['s] testimony[,] and because [] Riecks was [allegedly] not credible. This [c]ourt clearly believed [that Cobbs] choked and struck Ms. Cobbs[,] and thus found [him] guilty of simple assault. Relying on the medical records, this [c]ourt did not believe, however, that the choking described by Ms. Cobbs rose to the level of aggravated assault. This [c]ourt, likewise, determined that the testimony of [] Riecks was credible. Inasmuch as [Cobbs's] weight claim concedes that the evidence was sufficient to convict [him] of simple assault[,] and [] a weight of the evidence claim cannot be based on a challenge to the [c]ourt's credibility determinations, [Cobbs's] weight claim fails. This [c]ourt did not credit [Cobbs's] version of events and … was well within its province to make that assessment. The

---

[2] Though Cobbs's Statement of Questions Presented purports to challenge his conviction of terroristic threats in connection with his weight claim, he fails to raise any claims in his Argument section which could pertain to that conviction. *See* Pa.R.A.P. 2119(a). Additionally, Cobbs did not address, in his Pa.R.A.P. 1925(b) Concise Statement, how his conviction of terroristic threats was against the weight of the evidence. Based upon this defect, the trial court concluded that Cobbs waived his claim. Trial Court Opinion, 1/14/15, at 8 n.1 (citing **Commonwealth v. Williams**, 959 A.2d 1252, 1257-58 (Pa. Super. 2008)). We agree with the trial court's conclusion.

> trial evidence presented by the Commonwealth … was credible, competent and reliable[,] and established every element of simple assault. This [c]ourt has reviewed the trial record and believes that the verdict does not shock any rational sense of justice and, therefore, the verdict was not against the weight of the evidence.

Trial Court Opinion, 1/14/15, at 6-7.

We agree with the trial court's foregoing analysis and conclusion, mindful that we may not disturb the court's credibility determinations or substitute our judgment for that of the fact-finder. *See Sanchez, supra*. Moreover, contrary to Cobbs's claim, the trial court's finding that a portion of Ms. Cobbs's account of the assault was not credible in no way undermines the court's other credibility determinations or the adequacy of the evidence supporting Cobbs's convictions. *See Commonwealth v. Schmohl*, 975 A.2d 1144, 1147 (Pa. Super. 2009) (stating that "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.") (citation omitted). Cobbs essentially asks us to reweigh the evidence, which our standard of review prohibits. *See id.*; *see also Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009) (holding that the trial court properly exercised its discretion in denying a weight challenge where appellant asked this Court to reweigh the evidence). Furthermore, to the extent that there were purported conflicts in the testimony of Ms. Cobbs and Riecks, the trial court assessed the weight, if any, to be given this evidence. *See Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011)

(stating that it is exclusively the province of the fact-finder to determine the weight to be accorded conflicting evidence). Accordingly, we discern no abuse by the trial court in rejecting Cobbs's challenge to the weight of the evidence.

Next, Cobbs argues that the trial court committed reversible error in its evidentiary rulings during defense counsel's direct examination of Cobbs, ruling that counsel's questions were leading.[3] **See** Brief for Appellant at 20-24. According to Cobbs, the trial court's sustaining of the prosecution's objections to defense counsel's line of questioning violated Cobbs's constitutional rights to be heard and adequately respond to the charges against him. **Id.** at 23.

"The trial judge has wide discretion in controlling the use of leading questions. The court's tolerance or intolerance for leading questions will not be reversed on appeal absent an abuse of discretion." **Commonwealth v. Fransen**, 42 A.3d 1100, 1116 (Pa. Super. 2012) (*en banc*) (citation omitted). The Pennsylvania Rules of Evidence provide that "[l]eading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony." Pa.R.E. 611(c); **see also Chambers**, 599 A.2d at 640 (stating that "[t]he rule that a party calling a witness is not permitted to ask leading questions … is [to be] liberally construed in modern practice.") (citation omitted).

---

[3] "A leading question is one which puts the desired answer in the mouth of the witness." **Commonwealth v. Chambers**, 599 A.2d 630, 640 (Pa. 1991).

Cobbs challenges the trial court's sustaining of the Commonwealth's objections during the following exchange:

Q. [Defense counsel]:    And  when  you  got  there[, *i.e.*, Ms. Cobbs's home,] what happened?

A. [Cobbs]:    I  proceeded  to  yell,  scream.    I  was  completely agitated  at  the  fact  that  she  [Ms.  Cobbs]  would  do  this  while pregnant.  It was just repulsive to me.

Q.  All right.  Did she scream back?

A.  No she didn't.  She sat there.  She cried.

Q.  At any point in time did you hit her or strike her?

A.  No.

Q.  At any point in time did you flip her on the couch?

A.  No.

Q.  Did you ever have physical contact with her at that time?

[The prosecutor]:  Your Honor –

A.  No.

[The prosecutor]:  This is all leading questions.

THE COURT:  Is that an objection?

[The prosecutor]:  Objection.  Leading.

THE COURT:  I know I am a stickler for doing things according to procedure,  but  particularly  after  certain  events  have  occurred yesterday  and  this  morning  in  another  matter,  I'm  going  to  be worse,  not  better,  for  being  a  stickler  for  doing  it  by  the  book. Objection sustained.

[Defense counsel]:  Okay.

Q.  [Defense counsel]:  Did you assault her?

A. [Cobbs]: I did not.

[Defense counsel]: I don't see how that's leading.

THE COURT: He [the prosecutor] just stood up. Maybe he's tired of sitting. He didn't say anything. Mr. Petulla, [*i.e.*, the prosecutor,] do you wish to be heard?

[The prosecutor]: Your Honor, that – objection. Leading. What happened –

THE COURT: Technically, he's right. Sustained. "Did you assault her" is leading a little bit, just a little bit.

[Defense counsel]: It doesn't suggest an answer. He could say yes, or he could say no.

THE COURT: Well, it doesn't suggest an answer, but it suggests the issue of assault as opposed to what happened between them.

N.T., 5/2/14, at 10-12.

Cobbs argues as follows concerning the trial court's above rulings:

The questions put to [Cobbs], which were objected to as leading, were not leading. … [Cobbs] understands that one might view this issue as one vested in the sound discretion of the trial court. [Cobbs] submits that the trial court had no discretion to be legally incorrect. Secondly, the second objection by the Commonwealth was that the question was leading. The trial court agreed that such was not leading[,] but sustained the objection. This was an abuse of discretion.

Brief for Appellant at 24.

Upon review of the record, we discern no reversible error in the trial court's rulings. The rulings also did not prevent Cobbs from adequately responding to the charges against him. It bears repeating that Cobbs was tried in a non-jury trial. ***See Commonwealth v. Moss***, 852 A.2d 374, 381

(Pa. Super. 2004) (stating that when a trial court conducts bench trial, a presumption exists that the court disregarded any inadmissible evidence).

However, even assuming, *arguendo*, that the trial court made an improper ruling concerning one or both of the Commonwealth's objections, such error would be harmless and not entitle Cobbs to relief. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. … Harmless error exists[, in relevant part,] if the record demonstrates [that] … the error did not prejudice the defendant or the prejudice was *de minimis* …." **Commonwealth v. Hairston**, 84 A.3d 657, 671 (Pa. 2014) (citations and quotation marks omitted). Here, Cobbs was not prejudiced by the trial court's sustaining the objections, as the court, sitting as the fact-finder, considered Cobbs's testimony and fully understood that he denied all of the allegations against him. **See** Trial Court Opinion, 1/14/15, at 8 (stating that "[t]his [c]ourt understood [Cobbs's] denial that he hit or choked [Ms. Cobbs] and that he flipped the couch. This [c]ourt did not, however, give the denials any credence.").

Judgment of sentence affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2015